UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GABRIEL ZAMORA CHAVEZ, et al.,<br><br>Defendants. | No. 1:19-cr-00226-DAD<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS THE INDICTMENT AND TO SUPPRESS EVIDENCE<br><br>(Doc. No. 23) |

This matter is now before the court on a motion to dismiss the indictment and to suppress evidence seized by law enforcement brought on behalf of defendants Gabriel Zamora Chavez and Valdemar Zamora Aparicio (collectively, "defendants"). (Doc. No. 23.) An evidentiary hearing on the motion to suppress evidence was held by video conference on November 4, 2020. (Doc. No. 36.) Assistant United States Attorneys Kimberly Sanchez and Laura Berger appeared on behalf of the government, and attorneys Janay Kinder and Amanda Moran appeared on behalf of defendants.

Having considered the evidence presented and the arguments of the parties, for the reasons set forth below, the court will deny defendants' motion to dismiss the indictment and motion to suppress evidence seized as a result of their encounter with law enforcement officers on September 25, 2019.

**BACKGROUND**

According to evidence and testimony presented at the evidentiary hearing and attached to the parties' briefing, the following is a summary of the relevant facts. On September 25, 2019, defendants were driving eastbound on Avenue 56 toward State Route 99 in a leased U-Haul box truck. (Doc. No. 40 at 2.) The previous day, California Highway Patrol Officer F. Ibarra had participated in an investigation that resulted in the discovery of a large quantity of marijuana as well as weapons and disassembled vehicles near that same location. (Doc. No. 30 at 2; Doc. No. 39 at 44.) Several individuals had been arrested at that site the previous day as a result. (*Id*.) Officer Ibarra returned to that scene, which was located in a remote rural area, on September 25, 2019, to follow up on the previous days' investigation when he noticed the U-Haul truck, along with two other vehicles, entering the area and driving toward him on the rural dirt roadway. (Doc. No. 30 at 2; Doc. No. 39 at 47.) Officer Ibarra got in his patrol car and made a U-turn so as to travel toward those vehicles thus giving them a view of his patrol car, at which time the three cars also made a U-turn and headed back in the direction from which they had just come. (Doc. No. 39 at 47-48.) Officer Ibarra followed the three vehicles southbound on the dirt road and then eastbound onto Avenue 56. (Doc. No. 30 at 3; Doc. No. 39 at 48–49.) After following the U-Haul truck for several miles, Officer Ibarra observed it cross over the center lane marker into the westbound traffic lane. (*Id*.) At that point, Officer Ibarra decided to stop the U-Haul and called California Highway Patrol Investigator Benitez's cell phone to ask for assistance on the stop.[1] (*Id*.) Specifically, Officer Ibarra testified that he "started noticing the U-Haul truck was crossing over the yellow lines . . . [and] at that point [he] decided to conduct a traffic stop." (Doc. No. 39 at 70–71.) After Officer Ibarra initiated the stop and approached the driver side door of the U-Haul truck, the situation quickly escalated into a physical altercation involving the defendants and the law enforcement officers that ended with the arrest of both defendants. (*Id*. at 54–56, 75.) A subsequent search of the U-Haul revealed a stolen handgun, a large amount of money, a large

---

[1] When Officer Ibarra had left the original investigation site, Investigator Benitez was still there with another officer and thus Officer Ibarra knew that Investigator Benitez was still in the nearby area. (Doc. No. 39 at 50, 52 and 70.)

2

1  amount of marijuana, 40 caliber ammunition, and a high capacity 40 round rifle magazine.  (Doc.
2  No. 31-1 at 9.)
3        On October 14, 2019, defendants were charged in this action by way of grand jury
4  indictment with (1) carrying a firearm during and in relation to a drug trafficking offense in
5  violation of 18 U.S.C. § 924(c); (2) being felons in possession of a firearm in violation of 18
6  U.S.C. § 922(g)(1); (3) conspiracy to distribute and possession with intent to distribute marijuana
7  in violation of 21 U.S.C. §§ 846, 841(a)(1); (4) possession with intent to distribute marijuana in
8  violation of 21 U.S.C. § 841(a)(1); and (5) criminal forfeiture in violation of 21 U.S.C. § 853, 18
9  U.S.C. § 924(d)(1), and 28 U.S.C. § 2461(c).  (Doc. No. 13.)
10        On March 30, 2020, defendants filed a motion to suppress evidence and motion to dismiss
11  the indictment in which they contend that the initial stop was unreasonable and therefore all
12  evidence seized as a result of the stop must be suppressed as a fruit of the poisonous tree.  (Doc.
13  No. 23 at 26.)  The government filed its opposition to the motions on June 23, 2020, and
14  defendants filed their closing post-hearing brief on November 18, 2020.  (Doc. Nos. 31, 40.)  The
15  government filed a supplemental post-evidentiary hearing brief on December 2, 2020.  (Doc. No.
16  41.)

**LEGAL STANDARD**

18        The Fourth Amendment states, "[t]he right of the people to be secure in their persons,
19  houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."
20  U.S. Const. amend. IV.  The Fourth Amendment applies to the seizure of a person, even if that
21  seizure does not rise to the level of an arrest.  *Terry v. Ohio*, 392 U.S. 1, 17 (1968).  Traffic stops,
22  "even if only for a brief period and for a limited purpose," are "seizures" within the meaning of
23  the Fourth Amendment, and therefore are "subject to the constitutional imperative that [they] not
24  be 'unreasonable' under the circumstances."  *Whren v. United States*, 517 U.S. 806, 810 (1996);
25  *see also United States v. Arvizu*, 534 U.S. 266, 273 (2002); *United States v. Colin*, 314 F.3d 439,
26  442 (9th Cir. 2002) ("The Fourth Amendment's prohibition against unreasonable searches and
27  seizures applies to investigatory traffic stops.")  "A police-initiated traffic stop is reasonable
28  under the Fourth Amendment if the police stop the vehicle because of a 'reasonable suspicion'

that the vehicle's occupants have broken a law." *United States v. Hartz*, 458 F.3d 1011, 1017 (9th Cir. 2006); *see also United States v. Hensley,* 469 U.S. 221, 226 (1985) ("[L]aw enforcement agents may briefly stop a moving automobile to investigate a reasonable suspicion that its occupants are involved in criminal activity."); *United States v. Drake*, 543 F.3d 1080, 1087–1088 (9th Cir. 2008); *United States v. Lopez-Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000). An officer making a traffic stop "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity," in light of the totality of the circumstances. *United States v. Cortez*, 449 U.S. 411, 417–18 (1981); *see also Navarette v. California*, 572 U.S. 393, 397 (2014); *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013) (*en banc*). The reasonable suspicion standard is intentionally abstract, and courts are to give "due weight" to the factual inferences drawn by law enforcement officers. *Arvizu*, 534 U.S. at 273–77; *see also United States v. Edwards*, 761 F.3d 977, 983 (9th Cir. 2014) ("Reasonable suspicion 'is dependent upon both the content of information possessed by police and its degree of reliability,' and '[t]he standard takes into account the totality of the circumstances—the whole picture.'") (quoting *Navarette*, 572 U.S. at 397); *Hartz*, 458 F.3d at 1017 ("Reasonable suspicion exists if 'specific, articulable facts . . . together with objective and reasonable inferences' suggest that the persons detained by the police are engaged in criminal activity.") (quoting *Lopez–Soto*, 205 F.3d at 1105). Finally, reasonableness is based solely on objective circumstances, and "[t]he fact that the alleged traffic violation is a pretext for the stop is irrelevant, so long as the objective circumstances justify the stop." *United States v. Fowlkes*, 804 F.3d 954, 971 (9th Cir. 2015) (quoting *United States v. Wallace*, 213 F.3d 1216, 1219 (9th Cir. 2000)); *see also Florida v. Jardines*, 569 U.S. 1, 10 (2013) ("a stop or search that is objectively reasonable is not vitiated by the fact that the officer's real reason for making the stop or search has nothing to do with the validating reason.").[2] Accordingly, the subjective belief of an officer in conducting a traffic stop is generally irrelevant. *United States v. Mariscal*, 285 F.3d 1127, 1130 (9th Cir. 2002). "All that is required is that, on an

---

[2] Of course, "[s]earches and seizures that offend the Fourth Amendment are unlawful and evidence obtained as a direct or indirect result of such invasions is considered 'fruit of the poisonous tree' and is inadmissible under the exclusionary rule." *United States v. McClendon*, 713 F.3d 1211, 1215 (9th Cir. 2013).

4

1 objective basis, the stop 'not be unreasonable under the circumstances.'" *Id*. (citing *Whren*, 517
2 U.S. at 810).

## ANALYSIS

Resolution of the pending motions rests on whether Officer Ibarra had a reasonable suspicion that the U-Haul box truck had been driven in a manner violating the California Vehicle Code. (*See* Doc No. 40 at 1.) As an initial matter, the court finds Officer Ibarra's testimony at the evidentiary hearing regarding his observations and the reason that he decided to conduct a traffic stop of the U-Haul truck driven by defendant Aparicio to be fully credible. As the government points out in its briefing, "[r]egardless of the articulated factors amounting to reasonable suspicion for an investigative stop, Officer Ibarra had probable cause to stop the U-Haul because he witnessed the driver commit a traffic violation." (Doc. No. 41 at 6.) Finding Officer Ibarra's testimony in this regard to be credible, the court concludes that he did have the required reasonable suspicion that he had witnessed a traffic violation. No matter what other curiosities or suspicions with respect to the presence of marijuana or otherwise that Officer Ibarra harbored as he followed the truck, once he witnessed that traffic violation, he was legally entitled to stop the U-Haul vehicle. *See Whren*, 517 U.S. 806.

Defendants contend that defendant Aparicio did not violate any traffic law in his driving of the U-Haul truck on the day in question. (Doc. No. 40. at 4–5; Doc. No. 39 at 15.) At the evidentiary hearing, defendant Aparicio testified "I swear to God that I didn't [cross the center yellow line]." (Doc. No. 39 at 15.) The court finds Officer Ibarra's testimony that he observed the U-Haul box truck cross the middle lane divider line as he followed the truck to be more credible than defendant Aparicio testimony denying that he did so.

Defendants also rely on state court decisions addressing situations where vehicles are stopped for weaving within their traffic lane.[3] (*Id*. at 5.) But those cases are obviously irrelevant here because this traffic stop was for crossing a center lane line. Finally, defendants now argue in

---

[3] Even that conduct has been found under California law to justify a traffic stop by law enforcement under some circumstances. *See United States v. Alvarez*, 226 F. Supp. 3d 1059, 1067-68 (E.D. Cal. 2016).

their post-evidentiary hearing brief that California Vehicle Code § 21650, the provision that Officer Ibarra allegedly witnessed being violated by the U-Haul truck, contains an exception when the roadway upon which the vehicle is travelling is not sufficiently wide.  (*Id*. at 5) (citing California Vehicle Code § 21650(e)).  Defendants for the first time contend that Avenue 56 and Road 128 are rural county roads where the lane width is narrower than that of a typical road.  (*Id*.)  Defendants further argue that U-Hauls, such as the one defendant Aparicio was driving, are larger than normal vehicles and are typically rented by untrained drivers.  Defendants ask that the court take judicial notice of these facts underpinning their new arguments even though they had an opportunity to present evidence at the hearing addressing these points but did not do so.  Based upon these unsupported arguments, defendants aver, "it is axiomatic that the one lane road, compared to the bulky box truck, is considerably narrow . . . , invoking the exception of subsection (e)."  (*Id*. at 6.)

The government responds, in part, that this is a simple case because "[a]s in *Whren*, 'the officer[] had probable cause to believe that [defendant] had violated the traffic code.  That rendered the stop reasonable under the Fourth Amendment, the evidence thereby discovered admissible . . ..'"  (Doc. No. 41 at 7) (quoting *Whren*, 517 U.S. at 819).

In *Lopez-Soto*, cited above and relied upon by defendants here, the arresting officer conducted a traffic stop of the defendant's vehicle for not having a registration sticker affixed to his rear window, as required under Baja California law.[4]  205 F.3d at 1005.  However, "[i]n fact, the applicable Baja California code section direct[ed] that the sticker be displayed on the windshield."  *Id*.  Because the traffic stop was based upon the officer's mistaken belief as to what the governing law required, the Ninth Circuit found the vehicle stop to be unreasonable and suppressed the evidence seized as a result thereof.  *Id*. at 1106.

By contrast, here, the traffic stop carried out by Officer Ibarra was grounded in governing law, even if a potential exception to the Vehicle Code *could* possibly apply.  This case is not an

---

[4] California law requires foreign vehicles traveling on state roadways to be properly registered in their home jurisdictions, thus causing the officer to check the car with Baja California license plates for a valid Baja California registration sticker.  *Lopez-Soto*, 205 F.3d at 1103.

example of an officer conducting a vehicle stop based upon a misunderstanding of what the law required as was the case in *Lopez-Soto*; rather, here the officer relied upon a reasonable interpretation of the applicable vehicle code provision in determining that he had witnessed its violation. As the Supreme Court has explained, "what is generally demanded of the many factual determinations that must regularly be made by agents of the government . . . is not that they always be correct, but that they always be reasonable." *Illinois v. Rodriguez*, 497 U.S. 177, 185 (1990); *see also United States v. Hatley*, 15 F.3d 856, 859 (9th Cir. 1994) (upholding a warrantless search of a vehicle that police reasonably believed was mobile but was in fact immobile because that search was objectively grounded in the governing law). Here, even if Officer Ibarra could have concluded that the U-Haul box truck did not have sufficient space to stay within the lines on the highway, he just as reasonably could have come to the opposite conclusion. Thus, even if the court were to take judicial notice of the facts defendants base their new post-evidentiary hearing arguments upon, it would still conclude that the traffic stop of the U-Haul was not objectively unreasonable under the circumstances.[5]

None of defendants' many remaining arguments are persuasive. In this regard, defendants have suggested that the vehicle stop of the U-Haul was based upon some sort of mistaken assessment of its connection to the officers' investigation of the day before or based upon pure hunch or suspicion. Those conclusory arguments, however, have not been supported by any credible evidence. Likewise, defendants claim that the officers intentionally engaged in "radio silence" during this encounter in order to deprive defendants of exculpatory evidence is completely unsupported by any evidence and is based upon nothing more than wild speculation. Defendants also have contended that the officers opened the U-Haul box truck after stopping it but before making any contact with the defendants, and the defendants themselves testified to that effect at the evidentiary hearing. (Doc. No. 39 at 12, 21–22, 24, 33.) Though it does not appear relevant to resolution of the pending motions, the court also finds the officers' testimony that the rear door of the U-Haul box truck was not opened until sometime after the defendants were taken

---

[5] The court need not address the parties' remaining arguments with respect to investigative stops because the traffic violation alone justified the vehicle stop.

into custody (*id*. at 52–53, 60, 73, 104, 108–09, and 115) to be far more credible than the testimony of the defendants. The same is true as to the officers' version of the conduct of the defendants following the traffic stop that resulted in the physical altercations between the officers and the defendants, leading to the arrest of the defendants.

## CONCLUSION

For the reasons explained above, the court concludes that the traffic stop of the U-Haul truck was supported by the officer's observation of a traffic violation and was therefore reasonable. The evidence discovered as a result of that valid vehicle stop is therefore not subject to suppression as the fruit of any poisonous tree as defendants contend. Consequently, defendants' motion to suppress the discovered evidence (Doc. No. 23) is denied. Likewise, to the extent defendants' motion to dismiss relies on the suppression of the evidence seized, that motion is denied. Finally, to the extent defendants have moved to dismiss based upon an alleged *Brady* violation, that motion is also denied as wholly unsupported.

IT IS SO ORDERED.

Dated: **January 8, 2021**

_____
UNITED STATES DISTRICT JUDGE